## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARIA DE LOS ANGELES**
**BARRETO ROSA, et al.,**
Plaintiffs**,**

                                              **CIVIL NO. 02-2554 (DRD)**

        v.

**ALEIDA VARONA-MENDEZ, et al.**,
Defendants

### OPINION AND ORDER

Plaintiffs Maria de los Angeles Barreto Rosa, her husband, and the Conjugal Partnership comprised by them ("Plaintiffs"), filed the instant case pursuant to this Court's jurisdiction based on the provisions of 42 U.S.C. § 1983 for an alleged violation to Ms. Barreto's civil rights under the First and Fourteenth Amendment of the United States Constitution.  On June 8, 2005, the Court referred to Magistrate Judge Aida Delgado Colon defendants' request for *brevis* disposition for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 72.1(b).  (Docket No. 47 regarding Docket No. 33).  The Magistrate, subsequently, filed her Report and Recommendation ("RR") on August 9, 2005.  (Docket No. 51).  In her report, the Magistrate recommends the motion to dismiss filed by defendants be denied pursuant to the *res judicata* doctrine having been waived by defendants pursuant to <u>Calderon Rosado v. General Elec. Circuit Breakers</u>, 805 F.2d 1085 (1st Cir. 1986).  Defendants filed their objections thereto on August 19, 2005 within the time period allowed by the Court.  (Docket No. 54).

After considering the Magistrate's RR, the defendants' objections, and the record as a whole, for the reasons stated below, the Court **DIFFERS FROM** the opinion issued by the Honorable Magistrate Judge and **GRANTS** defendants' motion for summary judgment.

Page 1 of  17

# I

## MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Rule Local Rule 72.1(b). *See* Mathews v. Weber, 423 U.S. 261 (1976).  An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Local Rule 72.2(a)-(b); FED.R.CIV. P. 72(b). Moreover,  28 U.S.C. § 636(b)(1), where pertinent, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*See* 28 U.S.C. § 636(b)(1).

# II

## SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law."  Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174,

178 (1st Cir. 1997).  When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the  resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact.  *See* Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, at187; McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.).  Furthermore, a fact is "material" if it potentially could affect the suit's outcome.  *See* Id.  An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor.  *See* Id.  The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *See* Reeves, id. Furthermore, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose

his own ideas of probability and likelihood[.]" Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses."  Id.  Issues of motive are usually not appropriate when in summary judgment for these are questions better suited to be resolved by the trier of facts.  See Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-91 (1982); Lipsett v. University of P.R., 864 F.2d 881, 895 (1st Cir. 1988); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000); see also Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Mulero Rodriguez v. Ponte Inc., 98 F.3d 670, 677 (1st Cir. 1996); Stoutt v. Banco Popular de P.R., 158 F.Supp.2d 167, 172 (D.P.R. 2001).

An absence of evidence on a critical issue weighs against the party  –be it the movant or the non-movant–  who would bear the burden of proof on that issue at trial.  See Perez v. Volvo Corporation, 247 F. 3d at 310; see also Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998);  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).  Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95.

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor.  Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment."  Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997).  In other words, the court must construe the record and all

reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added).  The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is nonetheless "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its required burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).   In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment).  Notwithstanding, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**. *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994).  However, even though that there is no opposition on file to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction to the party who fails to oppose.  *See* De la Vega v. San Juan Star, 377 F. 3d 111(1st Cir., 2004).

### III

## RES JUDICATA / CLAIM PRECLUSION

It is well known that Federal courts  must give full faith and credit to a final judgment issued by a Puerto Rico court, and as such, this court lacks subject matter jurisdiction to entertain a controversy previously adjudicated by the Puerto Rico courts.  *See* District of Columbia Ct.App. v. Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 1315-1317, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *see also* Henry v. Connolly, 910 F.2d 1000, 1002 (1st Cir.1990) ("A federal court cannot presume to sit in direct appellate review of final state court determinations in judicial proceedings."); *see also* Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 n. 1 (1st Cir.1998). Moreover, " 'lower federal courts possess no power to sit in direct review of state court decisions.' [Citations omitted.] If the... claims presented to a United States District Court are inextricably intertwined with the state court's [judgment] ..., then the District Court is in essence being called upon to review the state-court decision. This, the District Court [of Puerto Rico] cannot do." U.S. Industries v. Laborde, 794 F.Supp. 454, 463 (D.P.R.1992), citing, Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970); *see also* Guadaarrama v. U.S.Department of Housing and Urban Development, 74 F.Supp.2d 127, 138 (D.P.R. 1999).

It is equally clear that, under Puerto Rico law, the doctrines of res judicata and collateral estoppel preclude relitigation of claims and/or issues which have been, or **could have been litigated in a prior judicial action** for which judgment has been rendered.  (Emphasis ours) Baez- Cruz v. Municipality of Comerio[1], *supra*; Sahar Fatach v. Seguros Triple S, Inc., 147 P.R.Dec. 882 (1999).

---

[1]  In Baez-Cruz, as here, the Full Faith and Credit statute must be the starting point.  "[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories ... as they have by law or usage in the courts of such State [or] Territory ... from which they are taken."  28 U.S.C. § 1738.  Preclusive effect is given to state judicial proceedings, and it is Black-letter law that applicable collateral estoppel

*See generally*, Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). It is well-settled that a proceeding in a state court collaterally estops inconsistent arguments in a later federal action.  *See* Allen v. McCurry, 449 U.S. 90, 104-05, 101 S.Ct. 411, 419-21, 66 L.Ed.2d 308 (1980).

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." United States v. Mendoza, 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). Specifically, under the defensive use of the doctrine of collateral estoppel, a defendant can prevent a plaintiff from relitigating a claim that the plaintiff has already lost, even if against another defendant. See Parklane, 439 U.S. at 326 n. 4, 99 S.Ct. at 649; and Mendoza, 464 U.S. at 159, 104 S.Ct. at 571-572.  "A final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." [emphasis added] Apparel Art Int'l, Inc. v. Amertex Ltd., 48 F.3d 576, 583 (1st Cir.1995); *see also* Molina v. SeaLand Servs., 2 F.Supp.2d 180, 183 (D.P.R. 1997) (standing for the proposition that the preclusive effect of a state court judgment must be examined pursuant to state *res judicata* principles).

Furthermore, the First Circuit Court of Appeals has explained that "the doctrine of 'Res

---

rules are those of the state from which judgment is taken.  Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982).

The relevant portion of Puerto Rico's preclusion statute states as follows:

> In order that the presumption of *res adjudicata* be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes and persons of the litigants, and their capacity as such.

31 P.R. Laws Ann., § 3343.  The Baez-Cruz District Court concluded that as the Puerto Rico Supreme Court affirmed the finding by JASAP that the firing was not politically motivated, the Plaintiffs were collaterally estopped from relitigating the issue in Federal Court.

judicata generally binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting.' " <u>Futura Dev. Corp. v. Centex Corp.</u>, 761 F.2d 33, 42 (1st Cir. 1985) (citing <u>Capo Sanchez v. Secretary of the Treasury</u>, 92 P.R.R. 817 (1965)); <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth</u>, 814 F.2d 844, 846 (1st Cir.1987); see also, <u>Worldwide Food Distributors, Inc. v. Alberic Colon Bermudez</u>, 133 P.R.Dec. at 831. A federal court must provide a state court judgment the same preclusive effect as would be given that judgment **under the law of the state** in which the judgment was rendered. *See* <u>Migra v. Warren City School District Board of Education</u>, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (emphasis ours); <u>Molina</u>, 2 F.Supp.2d at 183.

Preclusive effect is given to state judicial proceedings, and it is Black-letter law that applicable collateral estoppel rules are those of the state from which judgment is taken. <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982).

## PUERTO RICO LAW

In order to apply the doctrine of res judicata, the Civil Code of Puerto Rico provides that "it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 P.R. Laws Ann., § 3343. This statute not only refers to *res judicata* matters, but also collateral estoppel by judgment. <u>Baez-Cruz</u>, *supra*; <u>Texaco Puerto Rico, Inc. v. Medina</u>, 834 F.2d 242, 245-46 (1st Cir.1987).

<u>The "Final and Unappealable" requirement:</u>

"Under **Puerto Rico law**, claim preclusion requires a prior judgment on the merits that is, in the authoritative Spanish, "final y firme" (officially translated as "final and unappealable")." <u>Cruz</u>

v. Melecio, 204 F.3d 14, 20-21 (1st Cir. 2000) (emphasis ours); quoting Worldwide Food Distribs., Inc. v. Colon Bermudez, 133 P.R. Dec. at 831. As such, a commonwealth court judgment cannot be accorded preclusive effect until all available appeals have been exhausted (or the time for taking them has expired). Id., Vega Arriaga v. J.C. Penney, Inc., 658 F.Supp. 117, 120-21(D.P.R.1987).[2]

"Res judicata is understood to mean that which has been settled by the final judgment of a judge or competent court and bears with it the firmness of its irreversibility." Worldwide Food, 133 P.R. Dec. at 834 (official trans. at 6) (quoting 8-2 Jose Maria Manresa, Comentarios al Codigo Civil Espanol 278 (1967)). When the Puerto Rico Supreme Court uses the term to describe a judgment, the court intends to denote unappealability. Cruz v. Melecio, 204 F.3d at 21; quoting, Ex parte Bolivar, 12 P.R.R. 261, 264-65 (1907) (explaining that "[t]he meaning of a 'sentencia firme' and a 'sentencia final' are entirely different in legal language, because an appeal does not lie from a 'sentencia firme', while an appeal does lie in the cases provided by the law from a 'sentencia final',and translating "firme" in this context as "final and unappealable").

Since pursuant to Puerto Rico law, a judgment thus becomes "final y firme" when no further appeal from it can be taken, In re Pagan Colon, 100 P.R.R. 220, 224 (1971), a preclusion principle that does not operate in the absence of a final, unappealable judgment, merits federal recognition. Consequently, federal courts can ascribe no greater preclusive force to a state court judgment than would the courts of that state. See Johnson v. De Grandy, 512 U.S. 997, 1005, 114 S.Ct. 2647, 129

---

[2]  "Even though the Puerto Rico Supreme Court has not made this point in so many words, we believe that this is the clear implication of the court's repeated emphasis on the phrase "final y firme" in its discussions of res judicata." Cruz v. Melecio, 204 F.3d at 21; Worldwide Food, 133 P.R. Dec. at 831; Rodriguez Rodriguez v. Colberg Comas, 131 P.R. Dec. 212, 222 (1992); A & P Gen. Contractors, Inc. v. Asociacion Cana, Inc., 10 P.R. Offic. Trans. 987, 988 (1981); De Jesus Borrero v. Guerra Guerra, 105 P.R.R. 282, 285, 286 (1976) (per curiam); Commonwealth v. Sociedad Civil Agricola, 104 P.R.R. 548, 554 (1975) (per curiam); Gonzalez Saldana v. Superior Court, 96 P.R.R. 119, 122, 123 (1968).

L.Ed.2d 775 (1994); <u>Board of Pub. Works v. Columbia College</u>, 84 U.S. (17 Wall.) 521, 529, 21

L.Ed. 687 (1873). Therefore, as in <u>Cruz v. Melecio,</u> because claim preclusion under Puerto Rico law

depends on the existence of an unappealable final judgment and the commonwealth court's partial

judgment in this case has finally reached its course's end and has become final and unappealable,

principles of res judicata foreclose the Plaintiff's claim.

 The Court, however, before entering into the merits of the issue at hand, must briefly point

to the fact that the prohibition set forth by the *res judicata* doctrine does entail certain exceptions.

Amongst these exceptions, the Courts have recognized that, if the parties agree or a defendant

implicitly assents to the splitting of a plaintiff's claims, a judgment in an earlier action which

normally would bar the subsequent action will withstand disposition based on the *res judicata*

doctrine.  *See* <u>Calderon Rosado</u>, 805 F.2d at 1087.  "The rationale is that a main purpose behind

*res judicata* principles is to protect a defendant from the harassment of multiple actions.  A

defendant who fails timely to complain waives the benefit."  <u>Id.</u>

## IV

## FACTUAL BACKGROUND[3]

 The complaint alleges that Ms. Barreto, an Administrative Judge for the Puerto Rico

Administration for Child Support Enforcement, was the victim of political discrimination because

of her affiliation with the New Progressive Party.  Ms. Barreto alleges a number of acts of

discrimination including her transfer to an ill-equipped office at a distant area of the island.

 Prior to the October 17, 2002, filing of this suit, Barreto, on February 5, 2002, filed a suit in

---

[3]  Understanding that the Magistrate Judge excellently summarized the factual background of in the instant case, and in the spirit of judicial economy, the Court incorporates herein the Magistrate Judge's Section I. of her Report and Recommendation.

the Court of First Instance of Puerto Rico seeking injunctive relief in Civil Case No. KPR 02-0277 (**Docket No. 27**). The claim in the local court was dismissed on July 11, 2002, on the basis that Ms. Barreto did not have a property right to remain working at her pre-transfer location. Thereafter the matter was appealed to the Circuit Court of Appeals of Puerto Rico.  Id.

While the local matter was before the Puerto Rico Circuit Court of Appeals, a motion for summary judgment was filed in the case at bar, and a result, it became necessary for this District Court to address the issue raised – *res judicata* – as it applied to this case (**Docket No. 6**). In its Opinion and Order dated September 30, 2003, the Court concluded that the same litigants are involved in the Commonwealth Court case and this case, and that essentially the same issues are raised in both cases (**Docket No. 27**, p. 5). The District Court also found that although "there is not a perfect identity of the causes raised at the different forums, however, the basic principles of the doctrine of *res judicata* applies because the federal claims should have been brought in the local courts, since they arise from the same nucleus of facts.  Further, the case under local law may determine certain critical facts amongst the parties." Id. at p. 6. Finally, the District Court found that inasmuch as the matter was pending on appeal there was no "final and unappealable" decision so that the doctrine of *res judicata* could not be invoked. Id. The Court specifically stated that, "it is imperative to note that the Plaintiff could have raised the federal civil rights issues in the local court and upon completion of that case, *res judicata* will apply to the instant case." *Id.* at p. 7.

On November 25, 2003, the Puerto Rico Circuit Court of Appeals reversed the decision of the Court of First Instance in *Barreto v. ELA,* KLAN 02-0866, and the case was remanded for an evidentiary hearing (**Docket No. 31**).  The defendants filed a motion for reconsideration on December 19, 2003, to no avail (**Docket No. 33**).  Next, the local matter was scheduled for a status

in the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Section, Civil No. KPE-02-277. Id. At the status conference held on October 4, 2004, argument was had by the parties. Barreto asked for voluntary dismissal of the request for injunctive relief, and the matter was dismissed with prejudice. The Order issued by the Court of First Instance states, "The plaintiff desists with prejudice the injunction petition because it is moot. In this case plaintiff advices, there is no action for damages and injury. Plaintiff informs the Court that she filed in the federal court an action for damages and injury for discrimination." (Court's translation) (**Docket No. 33,** Ex. A). The Court minutes for October 4th state that "the plaintiff desists with prejudice of its claim exclusively of an injunction since due to the passing of time it has become moot. It also informs the Court that the tort action is filed in the Federal Court." (**Docket No. 39**, Ex. 2). The Judgment was issued by the local court on October 7, 2004.[4]

On February 11, 2005, after Barreto had filed a motion in the Commonwealth Court action, Judge Oscar Dávila-Sulivers, Superior Judge in the Court of First Instance, Commonwealth of Puerto Rico, San Juan Section, entered an Order regarding the local action.  In such order, the state judge noted that "it is clear that the Plaintiff desisted from its claim with prejudice because the injunction petition had become moot." (**Docket No. 45**).  Further, "the Minutes is [sic] clear as to the effect that the Plaintiff desisted from its claim with prejudice exclusively from the injunction the Court being informed that the tort action had been filed in the Federal Court." Id. The judge then clarified, "That is to say, the Court of Instance does not have any doubts regarding the actions of

---

[4] Neither of the parties have provided to the Court an English translation of the Judgment, Notice of Judgment or the Court minutes in derogation of Local Rule 10(b). It is well-established that the Court must be provided with translations of same and that parties who fail to do so, proceed at their own risk. *See* Estades-Negroni v. Associates Corp. of North Am., 359 F.3d 1, 2 (1st Cir. 2004); United States v. Rivera-Rosario, 300 F.3d 1, 6 (1st Cir. 2002).

Plaintiff in this case. To desist from the injunction and action and continue litigating the tort action in the Federal Court as this party understands that it belongs there." Id.

**V**

**ANALYSIS**

The defendants move the Court for summary judgment on the basis that *res judicata* or claim preclusion bars this federal court action and, thus, the case must be dismissed.

It is the Magistrate Judge's contention that the present case falls within the amply recognized exception to the general rule prohibiting claim splitting as set forth in Calderon Rosado, 805 F.2d at 1086.  Magistrate Delgado understand that, "the waiver principle embodied in the *Restatement (Second) of Judgments* §§ 26(1)(a) (1982), applied to defendant who, seemingly agreeing to plaintiff's desire to litigate in federal rather than Commonwealth court, asked only that the [local] claim be dismissed with prejudice[.]" *RR*, at 7.  With this analysis in mind, and following this First Circuit precedent, Magistrate Delgado concluded that:

> [i]t is clear from the Commonwealth Court order and minutes of proceedings that neither the plaintiff nor the Commonwealth Court expected the voluntary dismissal with prejudice of the injunctive relief claim to bar the litigation of the §1983 claim pending in federal court.  Also, the facts before the Court do not indicate that the Defendants protested Barreto's statement to the Court that a matter was filed in federal court seeking damages, unlike the claim in the Commonwealth Court which sought injunctive relief. [ ]
>
> The undersigned finds that the waiver principle as set forth in *Calderon Rosado* applies to Defendants who appear to have sought to have the injunctive relief matter to be finally disposed of by insisting that the matter be dismissed with prejudice.[ ]

*RR* at 8-9.  The District Court does not agree with the Magistrate's conclusion, although the opinion

is well drafted and reasonable.[5]  However, we differ for the reasons stated herein.

Upon a thorough reading of *Calderon Rosado*, the Court cannot help but understand that defendant therein **implicitly acceded** to plaintiff's desire to litigate in federal court when he did not object **at any point or at any fora** to proceeding with the action in federal court and dismissing with prejudice the state court claim.  In the present case, however, even when the cause of action in state court did not include a cause of action pursuant to § 1983, plaintiff could have very well included said federal cause of action in those proceedings.  Because the origin of plaintiff's claim is unquestionably the same in both cases, as this Court has previously adjudged, there is an identity of causes.  In the instant case, then, all the factors allowing this Court to give the previous Superior court judgment[6] preclusive effect have been met.  This is not a case where, while two separate actions were pending amongst the same parties in different fora, defendant did not complain that plaintiff was splitting the cause of action and, thus, forcing defendant to defend in more than one forum, and when plaintiff announced that he was voluntarily dismissing his state cause of action only because he intended to litigate it in federal court, defendant remained silent and did not object to this manner of proceeding.  *See* Calderon Rosado, Id.

On the contrary, the record in the instant federal case pellucidly contradicts this analysis.  The Court explains.  Defendant's first substantial pleading in this forum was a motion for summary

---

[5]  The *waiver principle* stands for a general exception to the *res judicata* doctrine prohibiting claim splitting in that if the parties agree, or a defendant implicitly assents to a plaintiff splitting his claim, then, a judgment in an earlier action will not bar a subsequent action.  Pursuant to Restatement (Second) of Judgments § 26 cmt. a, illus. 1 (1982), a defendant acquiesces (or *waives* a *res judicata* defense) when he or she **fails to timely object**.  In other words, a defendant who, during the course of more than one action involving the same parties and the same claims, fails to object to the claim splitting.  *See also* Calderon Rosado, 805 F.2d at 1087; Marcano Arroyo v. K-Mart Inc., 81 F.Supp.2d 301, 308 (D.P.R. 1999).

[6]  Under Puerto Rico law, a voluntary dismissal with prejudice, as is the case at bar, is an adjudication on the merits, and, ultimately, bars a party from relitigating the same cause of action.  *See* Medina v. Chase Manhattan Bank, 737 F.2d 140 (1st Cir. 1984).

judgment based on the *Colorado River* abstention.[7]  Through said motion, defendants argued that they were being subjected to duplicative litigation in two courts.  Furthermore, defendants filed said request a little over a month after being served, and before plaintiff desisted in State Court.  *See* Docket 6 of December 30, 2002.  Accordingly, defendants **expressly objected** plaintiff's splitting of claims between state and this federal courts from the very beginning of the case.  Moreover, this Court agreed with defendants position and stayed the proceedings herein quickly manifesting that "[it] finds it difficult to conclude [that the proceedings are parallel] since both cases raise substantially the same redress for the same action."  *Opinion and Order*, Docket No. 27 at 10.  Therefore, plaintiff was forewarned that there was an objection by defendants expressed in federal court as to plaintiff maintaining two cases wherein all matters could be litigated in only one forum.  The Court also found that at that time, it could not apply the effect of *res judicata* to the issue at hand because the case at the local level had not concluded, and emphasized that "[p]laintiff's failure to file all available claims that could have been plead in the state of federal forum, caused an unnecessary splitting of the actions, and is subject to the 'final and unappealable' decision of the local court."  Id. at 7.  Finally, once the state court proceedings became "final and uanppealable", defendants quickly moved the Court to dismiss the instant claim pursuant to the *res judicata* doctrine.

_____

[7] In *Colorado River,* the Supreme Court established a doctrine governing the stay or dismissal of federal lawsuits for situations in which the three traditional abstention doctrines are inapplicable.  Id. at 817. This alternative doctrine focuses not on considerations of state-federal comity or on avoidance of constitutional decisions as in the traditional abstention doctrines, but rather on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 96 L. Ed. 200, 72 S. Ct. 219 (1952)).

The purpose behind the Colorado River doctrine is to determine whether exceptional circumstances exist in a case, which favor an exception in the exercise of federal jurisdiction.The Court also counseled in its holding that the decision "whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case. ..." Id. at 16.

The Court harbors no doubt that plaintiff could have brought the § 1983 claim in the local court, but voluntarily did not do so.[8]  Also, the Court does not doubt that defendants **timely objected** to plaintiff's claim splitting before plaintiff desisted in state court.  That is, plaintiff was duly informed since September 30, 2003 that defendant was expressly objecting in the federal court to seeing the case in two different fora.  Herein precisely lies the disagreement of the District Court with the Magistrate Judge's opinion.  That is, that the Magistrate Judge's conclusions were based strictly upon the conduct of the parties in state court without noticing defendants' clear objections manifested prior thereto in federal court.  Thus, the Court finds the Magistrate's conclusion that defendants herein consented to the claim splitting to be unavailing.

Finally, in the present case, equitable concerns are not present for plaintiff had an opportunity in the Superior Court case to bring forth her § 1983 claim.  Nothing in the record indicates that plaintiff was denied a full and fair opportunity to litigate her claim in that state forum.  Consequently, pursuant to *res judicata* principles plaintiff has already litigated her § 1983 claim and failed.[9]  To allow plaintiffs to relitigate the claims herein would undermine public policy considerations regarding the finality of judgments and judicial efficiency.  Moreover, "[a] party that splits her claims between two fora runs the risk that a final resolution in one forum will foreclose

---

[8]  Plaintiff could have also decided to file in the federal forum in the first place, expressly reserving her federal rights, and *then*, filed in state court, thereby saving his federal causes of action.  Pursuant to England v. Louisiana Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a plaintiff who files a case in federal court before state proceedings begin may advice the state court that it wishes to litigate its federal claim in that federal court, thus, allowing the federal court to engage in a *Pullman* abstention (*see* Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).  The *Pullman* abstention, in turn, permits the federal court to obtain from the state court an interpretation of the state law involved in the case.  This widely known *England Reserve* allows for a plaintiff to return to the federal forum for adjudication of the federal question after the state court has decided the issue of state law.  *See also* Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d252, 266 n.16 (1st Cir. 1993); Granados Navedo v. Acevedo, 752 F.Supp. 523 (D.P.R. 1990).

[9]  The doctrine of *res judicata* under Puerto Rican law, as stated *supra*, includes causes of action that could have been litigated.  *See* Baez-Cruz v. Municipality of Comerio, 140 F.3d 24 (1st Cir.1998).

adjudication in the other." <u>Marcano Arroyo</u>, 81 F.Supp.2d at 309.  Plaintiff ran that risk here and now must suffer the consequences of the strategy decision that led to the split herein.  This resolution is not unforeseeable, more so when the Court, when resolving the *Colorado River* abstention issue, alerted the parties of this possibility. Thus, plaintiff was properly forewarned by the Court of the risks behind the continuing of the dual-forum strategy.

## VI

## CONCLUSION

Accordingly, and for the reasons aforementioned, the Court **GRANTS** defendants motion for summary judgment (Docket No. 33) and **DISMISSES WITH PREJUDICE** all plaintiff's claims.

Judgment will be issued accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September of 2005

<u>s/ Daniel R. Dominguez</u><br>
**DANIEL R. DOMINGUEZ**<br>
**U.S. DISTRICT JUDGE**